Mathews, J,
delivered the opinion of the court. †
*401 The plaintiffs and appellants, in this case, after -stating that they and J. Gravier are the only heirs of Bertrand Gravier, deceased, alledge that John has sold to the defendants his undivided fourth part of a certain tract or parcel of land known by the name of the batture, situated in front of the faubourg St. Mary, being a part of the succession of said Bertrand Gravier; and that in consequence of this sale they are owers of said land in common with the defendants. They conclude their petition with a prayer for partition.
The answer of the defendants, who are here appellees, contains a denial in general terms of all the right and title to the property in the plaintiffs ; and two pleas in bar, 1st Res judicata under a decree of a competent tribunal of the Spanish government, rendered in August, 1797, by which they say the land in dispute was adjudicated to John Gravier, from whom they hold, as parcel of the plantation belonging to B, Gravier, deceased, 2d. Prescription to the action :—
In the course of the trial of this cause in the court below% an opinion of the judge was required by the defendants’ counsel, on a question “ whether the present action could be sustained against them,” and being in support of it, the opinion was excepted to. And now against this action, it is contended on their part, that without calling to their aid the subtilties and nominal dis *402 tinctions found in the Roman civil law on the subject of actions, which have been rejected by modern legislators, it is erroneous)}7 brought, even according to the plain and simple mode of proceeding in all cases, as prescribed by our laws, and particularly by the act of the legislative court-cil regulating the practice of courts in civil cases. By this law it is required that all suits shall be commenced by petition which, amongst other things, must “state the cause of action, and conclude with a prayer for relief adapted to the circumstances of the case.” To suits thus instituted, defendants are bound to answer, which they may do by a denial of the facts stated in the petu tion, or by stating new matter in avoidance thereof, or perhaps by both ; and on such pleadings, cases are submitted for judgment to our courts, both as to law and fact, either with or without the intervention of a jury, at the option of the parties.
The wisdom of these regulations, evidently-tending to simplify the way by which every individual of the community is to obtain justice, and clear it of all technical embarrassments, is obvious not only to lawyers but to all men of common sense.
But, it is true, (as insisted on by the counsel of the defendants) that these rules of practice ought not to receive a construction subversive *403 of necessary distinctions and productive of confusion in things which, from their nature, are wholly separate and distinct. Nor ought they to be so construed as to violate principles held sacred in relation to the necessity of agreement between allegation and proof.
Leaving out of view the names of actions and all over nice distinctions relating to them, let us test the propriety of the present suit by the act above cited, and by the rules of law which hold in abhorrence a multiplicity of actions and require such certainty in legal proceedings as to put an end to litigation. The plaintiffs, as we have already seen, state themselves to be coheirs with J. Gravier, and that they are entitled to three-fourths of the estate of Bertrand Gra-vier ; that the land in question is a part of the succession of their common ancestor; that John has sold to the defendants an undivided fourth part of it, and that in consequence of this sale, they now hold the property in common with said defendants, and conclude with a prayer to have it divided.
If these allegations be true, there can be no doubt of the plaintiffs’ right of action for a partition of property thus held in common by them and the defendants, who admit their quality as heirs, and that the property, a division of which is claimed, \yas once a part of the estate of the *404 eornmon ancestor of John Gravier, under whom they claim title to it, and these plaintiffs. But they say that John acquired a title to all the estate of the deceased by an adjudication of a proper and competent tribunal, and that the entire property in the land, of which a partition is claimed in the present suit, being in him at the time of his sale to them, they do not hold it in common with the plaintiffs, and to this effect they offer in evidence an act of sale for two-thirds of it. This part of the defendants’ answer, is clearly a statement of new facts in avoidance of those stated by the plaintiffs in their petition, on the truth or falsehood of which depends not only the correctness of th,e present action, but the right of the plaintiffs to recover in any form of action ; and in our opinion, these rights may be as well decided on in the manner in which they are presented by the pleadings in this suit, as they could in any other form. By proceeding in this way a multiplicity of actions is avoided, and the rights of the parties will be determined with sufficient certainty to prevent further litigation on the same subject. The judge of the district court was therefore correct in the opinion by which he sustained the action.
The inconsistency of the allegata et probata relied on by the defendants, appears not to be well founded. Two of the principal allegations, in *405 the petition are admitted, viz : the quality of the 1 _ 1 plaintiffs as heirs, and that the property was a part of the estate of B. Gravier, under whom 1 ⅜ # they claim ; and it is shewn that John Gravier, who is co-heir with them has sold two-thirds of it to the defendants, which is certainly evidence sufficient to prove that he has sold one-fourth, on the axiom that the greater must include the less.
We come next, in the order in which it is proposed to consider the case, to that objection which opposes all kind of actions for a recovery of property, either against the vendor or against the present defendants. This peremptory exception or plea in bar is founded on a senatus consultum given on a constitution of the Emperor Adrian, in relation to the difference of situation between possessors of inheritances in good or bad faith From the text and all commentaries on it, Latin, Spanish and French, it is evident that the sole intention of this law, is to protect persons who hold inheritances as owners, with just reasons to believe themselves such, against the claims of heirs who may appear after the property has been sold and alienated by the bona fide possessor ; in which case the heir can recovi r only the price, or so much of it as has enriched the seller.
And it follows as a necessary consequence of the protection given to the possessor in good *406 that when he is bound in warranty to the purchaser, the latter must also be protected against any suit brought by the real heir, otherwise the provisions of the law would become nugatory.
In applying this law to the present case, it is necessary to determine on the good or bad faith of the vendor only for if he held the property now in dispute bon fide, being a part of the inheritance of his brother B. Gravier, under whom the plaintiffs claim rights to it, either as sole heir believing that no other heir existed, or having been adjudged to him by a competent tribunal, it is believed the law above alluded to does protect the defendants against any suit for the recovery of the thing sold. But from the circumstances under which the seller to them held the estate of the deceased, we are of opinion that he cannot be considered as a possessor in good faith of that portion of it which is now claimed by the plaintiffs, either on a belief that he was sole heir, or that it was adjudged to him. If it were really adjudged to him, and the judgment by which he claims the entire succession of his ancestor, be valid and unimpeachable on any ground of nulMty, the defendants are under no necessity of reverting to this exception to the action, founded on the laws favoring honest possessors, for in that event they hold by purchase from one who *407 was both owner and possessor ; and their title is valid.
John Gravier’s want of good faith as a possessor, under a belief that he was sole heir to the brother, is so clearly evinced by his own communication to the Spanish tribunal that other heirs did exist, as to leave no doubt in the minds of the court on this point In testing his faith and honesty, as possessor under the adjudication of the Spanish tribunal, we are brought to a decision of the first question examine., by the counsel of the defendants in his brief of argument, and, as we believe, the most important in the cause. Were the premises sued for included in said adjudication ? This is a question of fact, and as the parties have submitted it to the court alone for decision, we are bound to examine it, and in doing this, reference must be made to the proceeding which took place before the Spanish tribunal, relative to the succession of B. Gravier, particularly to the inventory and appraisement which form the basis of its adjudication. The inquiry to be made is not only what was inventoried, but what was both invento, ied and appraised : the ap-praisement being, in our opinion, the principal fonndation of the judgment; the equivalent for which, one of the heirs was to become owner of the estate of the deceased on condition of paying *408 *^e^ts and dividing any sum that might re? main among his heirs.
The inventory is minute to an extreme. After describing the moveable property of the succes- , , . { . sion, the persons engaged in making it proceed to set down the real estate, amongst which “ are placed the lands of the plantation, the extent of which cannot be immediately ascertained, because many lots have been sold ; but N. Gravier informed that its limits ran as far as the bayou, according to the titles of the same. ” There is evidently no description by which the quantity, situation or limits of the plantation can be ascertained. But when it became necessary that the appraisers should fix a value on this real estate of the deceased, we find a description which can hardly be mistaken, viz :
About thirteen arpents of land of which the plantation consists, including the garden, from which land the most useful part has been cut off on the front; the remainder being the lowest land, inclosed with bad fences, etc.” The front had been taken off by the deceased, or some pri- or owner; that which constituted it, as appraised, was the rear of the original plantation which ran to the river, and is described as the lowest land, such as is generally found at a distance from the river. Is it possible, under such a description as this, confining the land of the planta . *409 lion appraised to the rear of the original tract, 1 . b ’ to the lowest land, inclosed by bad fences, to leave the fences to pass the front already taken on, and to include a parcel of land, which, from its situation on the river, may be considered as the highest of the original tract? To include in it the batture, by this description, is thought to be impossible, on any fair construction of its expressions. It was, at the time of the appraisement, a spot of ground wholly separated and distinct from the plantation, as appraised, and did not pass with it by the adjudication of the Spanish tribunal. And it is admitted that it was not adjudged under any other name. Being of opinion that John Gravier acquired no title, to any part of his brother’s succession, under the decree, by which it is adjudged to him at its appraised value, exceot that which was actually appraised, and being also of opinion that the bat-ture never was inventoried or appraised, it is thought useless to enter into any lengthy discussion, on those parts of the defence, which insist that all the succession passed by the judgment of the Spanish tribunal, because the heir to whom it was adjudged was laid under an obligation to pay the debts of the deceased, and that the land in dispute passed as a part of the plantation, because many lots in the back part of the faubourg were transferred as a part of it. As to the first, *410 jj. -1S suffrc;ent t0 observe, that, as J. Gravier took ⅜ the estate with the benefit of an inventory and appraisement, he could not, under the decree, be bound to pay debts beyond the amount of the appraisement.
Whether he has a right to hold any lot which Avas separated, by known and established lines and boundaries, from the remainder of the plan* tation, might be forcibly questioned. But it appears clearly from the inventory and appraisement, that many were distinctly inventoried and appraised ; which shews that it was not believed or understood by the judicial officers of the Spanish government, who acted in the case, that all the lots in the faubourg, the right to which remained in B. Gravier, at the time of his death, would pass by their decree under the description of the plantation. See the Spanish record, fols. 157, 158, 159, 160 and 187.
The last means of defence, contained in the anstver of the defendants, is the prescription to the action : and, on this ground, it is contended that the present suit can be prescribed against by a lapse of ten or twenty years ; ten when the parties are present, and twenty Avhen absent. It must be conceded that an action for partition, speaking of it in general terms, can be prescribed against on’y by a lapse of thirty years, and not even by this or any other much greater length *411 of time when the partners or co-heirs possess in ¡_ 1 common an inheritance or property, See the Recopilacion, Febrero, Ayora and other authorities cited on this point.
The prescription of ten and twenty years, above alluded to, takes place in relation to inheritances on a presumption that a partition has been made between co-heirs of full age, who possess and live separate during those periods ; but this presumption always yields to contrary proof, and, in the present case, it appears to us to be abundantly shewn that the property, of which a partition is now claimed, was never acted upon by any tribunal, either by way of partition amongst the heirs of the deceased or adjudication to any one en masse. The action of the plaintiffs is therefore not barred by prescription. But (as if opposition was never to cease) it is said that although their action is not barred by prescription, yet the right of one of them, Jeanne Bordier, is barred by a judgment rendered in a former suit—commenced and prosecuted on her behalf, at the instance of her guardian, to compel J. Gravier to account to her for her portion of ihe succession, of B. Gravier, their common ancestor. This suit proceeded to a judgment against the defendant to account; and the purchaser of the bat-ture, being made a party, was enjoined from pay, jpg over the price to the seller, and this circum *412 stance is now insisted on as a confirmation of the . . , sale and a renunciation on the part of the minor to the thing sold, having elected to take the price in lieu thereof. After the judgment to account and the sequestration of the price in the hands of the purchaser, the suit was discontinued by leave of the court in which it was brought, before any account was rendered by the defendant. We are of opinion that these proceedings, thus carried on by the guardian of the minor, do not affect her right of action in the present case. First—because nothing has been finally determined in the former suit: and secondly—because her guardian had no right to choose for her between the thing and its price, or to enter into any transaction or compromise about her estate, without judicial authority.
Several exceptions were taken in the course of the trial in the district court, by the counsel for the plaintiff, to opinions of the judge relating to testimony offered to prove that the batture was not included in the inventory and appraisement. A witness, offered on the part of the defendants to prove that it was actually appraised, was rejected by the judge, and a bill of exceptions filed in consequence of said question.— Without examining these bill of exceptions in detail, suffice it to observe that we believe the judge of the court below was correet in rejecting *413 oral testi mony as to what was intended by the written documents, contained in the mortuaria of B, Gravier, which alone we have taken into consideration in deciding on these facts. Oral ° . evidence was well received on the subject of actual occupancy, but not in relation to title.
On the best examination we have been able to give rhis case, we feel bound to declare it as our opinion that the judgment of the court below is erroneous, and must therefore be reversed, avoided and annulled, which is hereby ordered And proceeding here to give such judgment as ought there to have been given, it is further ordered, adjudged and decreed, that a partition of the land in dispute do take place, according to the rules and regulations of law in such cases made and provided ; reserving to the defendants, any right which they may have to be remunerated for expences laid out in reclaiming and improving said property. And it is further ordered and decreed, that the cause be sent back to the district court, to cause a partition to be made as herein decreed, by allotting to each of the plaintiffs one fourth part value of said land, being three-fourths, and the remainder to the defendants.
On the day after the judgment was pronounced. Duncan, for the defendants, read a petition, praying that the judgment might be declared null *414 and void, on the ground of its having been pro- ° nounced more than fifteen days after the close ox argument. He relied on the fourth section Df the act of 1813 ch. 47, which provides that “in no case shall they (the supreme court) delay more than fifteen days the pronouncing of their judgments. ” 2 Martin's Digest, 144, n. 7.
The Court refused to receive the petition, stating that the judgment had not yet passed in rem judicatam and the case might be reheard, if good reasons were shewn, on the application of either party, under the general rule of March term, 1814, 3 Martin, 280. That it was doubtful, whether the recourse of nullity against final judgments of any court, as it prevailed, under the Spanish government, before the court rendering the judgment, was still a part of the judiciary system of the state—that, admitting that it was, such a recourse was not allowed, in Spain, in regard to judgments of courts of dernier resort. Meeker's assignees vs. Williamson & al. syndics, 4 Martin, 625, Williamson & al vs. their creditors, 5 id. 618, Recopilacion, 4, 17, 4 —That if this recourse still existed, it was to be sought in a distinct suit, the adverse party being served with a copy of the petition and cited That the court had often found it impossible to come to a determination, till after a fortnight from the close of the argument—-that, in a particular case, in *415 the western district, Seville vs. Chretien, the court, being composed of two judges on:y, the junior one having been of counsel in it, found it • ° . impossible to come to a determination without consulting authorities not within their reach at Opelousas, and the judgment was accordingly postponed till the following year—that, in such cases, the court thought it their bcunden duty to pronounce, as soon as possible, after they had formed an opinion—that the opportunity was, however, always afforded to counsel who imagined that their arguments might have been forgotten, to be heard—an opportunity which, in this case, was offered, and of which the counsel thought it needless to avail themselves.*

 Derbigny, J. did not join in this opinion, having been consulted in the case, while at the bfcr.

 The argument in court began on the 1st and was concluded on the 15ih of December. The judges took no notes, being informed that each party would furnish a written argument, containing a note of all the authorities cited. The plaintiffs’ counsel, some time after delivered a printed argument to the judges and to the defendants’ counsel, who asked time to have an argument or answer prepared and printed. This was not completed till after the Christmas and New Y. ar holidays, and the argument as soon as received was communicated to the plaintiffs’ counsel, who returned it about the middle of January and the judgment of the court was pronounced on the 3d of Fcbruarj', the court, composed of two judges only, not having been able to agree, till then. Mr. Livingston, on behalf of himself and his co-defendants, presented a petition to the Legislature, then in session, complaining of the refusal of the supreme court “to listen to the argument and authorities, by which they could have shewn that the judgment was void, or to receive their pe-petition,” and praying that some legislative provision might be made for the relief of die petitioners, &c. The House of Representatives rejected the petition.