GRAVIER vs. GRAVIER'S HEIRS:

GRAVIER'S HEIRS vs. GRAVIER.

SAME vs. SAME.

He who has stipulated in favor of another may revoke the stipulation any time before acceptance. A party who alleges that writings produced against him are forgeries, is not obliged to disavow them formally, in order to be allowed to offer evidence of the fact.

If the heir who is present buys property as litigious, he cannot claim the increased value in case of eviction.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. These three actions were consolidated in the court of the first instance, and the matters at issue in the whole of them were decided by one judgment.

They were commenced in the same order of time with that in which they have just been enumerated. The first was by John Gravier, who states in his petition, that he was a creditor of his brother Bertrand, at the time of his decease, in the sum of $15,045, and that for the purpose of securing the said sum he be

East'n. District.
*Jan'y.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIR'S.

came the purchaser of the whole of his estate, for the sum of $34,338 75 cents. That since the period of the adjudication, he has paid various debts of the estate, so that it is now indebted to him in the sum of $38,665 10 3-4 cents; and that notwithstanding these facts, the representatives of the heirs have lately caused to be inscribed in the office of the register of mortgages the obligation and mortgage given by him at the time of the adjudication.

The petition concludes by a prayer that the mortgage may be cancelled, and the heirs of Bertrand Gravier condemned to pay the plaintiff the balance above stated, of $38,665 10 3-4.

Previous to answering the petition, the defendants had commenced two suits against the plaintiff, and in the answer filed after a general denial of all the facts alleged by him, they refer to the actions just instituted, and pray that they may be consolidated with this.

In the first of these actions, the heirs of Bertrand state, that in the year 1797, their ancestor died in New-Orleans, leaving a large estate, real and personal.

That John Gravier, one of their co-heirs, caused all that part of the suburb St. Mary, and of the land situated in the back thereof, to be

Eas'n. District.
Jan'y. 1825.

GRAVIER
vs.
GRAVIER'S
HEIRS.

adjudicated to him for the price for which they were appraised in the inventory, to wit, for the sum of $31,798.

That the conditions of the purchase were, that the said John Gravier should account to his co-heirs for their respective shares, in the balance of the same.

And that although often requested, he had refused to pay to the petitioners the amount due them; but had filed in court an account, the vouchers of which he had refused and still refuses to produce.

They therefore pray for an order of seizure and sale against the property of John Gravier, to pay them the balance due on the adjudication of the estate of their ancestor, with interest from the 19th December, 1798, and costs of the suit.

To this petition, the defendant, John Gravier, pleaded, that by the terms of the adjudication, he was obliged to pay the debts due by the estate; and that until it shall be shewn by the plaintiffs that there is a balance remaining in his hands after the payment of the debts so due, they are not entitled to bring this suit.

That he has paid debts to a large amount beyond the price of adjudication: That there

East'n. District,
Jan'y. 1825.

GRAVIER
vs.
GRAVIER'S
HEIRS.

are yet debts due by the estate of Bertrand Gravier, and that until the same is satisfied, no right of action has accrued to the plaintiffs.

The second suit was instituted by the same persons. In their petition they state, that in addition to the property left by Bertrand Gravier at his decease, there were debts due to the estate to the amount of $30,000 and upwards: That John Gravier was appointed to collect the same, and that he undertook to do so, but though often requested, he had refused to render any account.

They therefore pray judgment for their share of the said debts, which share they aver to be $22,500.

To this action the defendant pleaded in substance, as he had done to the first. That by the terms of his purchase, he was first to pay the creditors, that he had paid them to an amount far beyond what he had received from the estate. That there were yet heavy debts due by the succession, and that from all these considerations the plaintiffs were not entitled to maintain their action against him.

From these pleadings, it may be seen, that although the parties differ widely as to the merits of their respective pretentions, yet the

East'n. District,
*Jan'y.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

points at issue are few and simple.    They are in truth but these: 1st. One of law, has the plaintiffs by the terms of the original contract a right to bring an action against the defendant?    If they have, what is the balance due?

The force of the exception against the plaintiffs' right to sue, will be best understood by quoting the particular expressions used in the contract of adjudication.    The decree after reciting, that the attorney of the absent heirs, had consented that the property left by Bertrand Gravier, should be adjudicated to John Gravier at the price of appraisement, proceeds to adjudicate the property to him upon his giving security and " *Con la calidad de satisfacer a los acreedores que resultaren, lo que legitamente se justificare deverseles; y tam bien a los otros sus coheredoros la parte que les pertenesca,*" " on the condition to satisfy such creditors as may appear and legally establish their claims, and also his co-heirs, the part which shall be coming to them."

From these expressions, it has been contended, that the condition on which John Gravier took the property, was to pay the creditors of his brother's estate; and by doing so a contract was formed between him and them, which they

East'n. District,
*Jany.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

may enforce, and which consequently cannot be revoked without their consent.

Other arguments were used and several authorities cited to shew the plaintiffs had prematurely commenced their action; but the whole strength of the objection lies in the statement just made, and to its correctness our attention has been principally turned.

The counsel, who argued in opposition to this objection, drew his authorities principally from the Roman and French law; and he proved, to our entire satisfaction, that according to the received doctrines in both these systems of jurisprudence, the person who has stipulated in favor of another, may revoke it at any time previous to the acceptance of him, for whose benefit the promise has been taken.

The question is not so free from difficulty when examined, under the ancient jurisprudence of the country. A law of the *recopilacion* permits in express terms a contract to be made for the benefit of a third party. It is the opinion of the Spanish commentators, that according to this law, the person in whose favor the stipulation is made, may maintain an action to enforce it. In this they seem to think a material difference exists between the laws of Spain and those of Rome.

East'n. District.
*Jany.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

But according to other writers on the civil law, this is a mistake. Merlin, who has examined the subject fully, and who cites a vast number of authorities in support of his opinion, shews, we think, satisfactorily, that the early established doctrine in the Roman jurisprudence, that no one could stipulate for another, was subsequently altered and modified by different edicts of the emperors: and in the late and more improved state of their laws, such contracts were authorised, and might be enforced by the third person, in whose favor they were made.

It seems, however, to be the opinion of the writers on the Spanish law, that such stipulations could not be revoked by the party receiving them, when the contract was made for his joint benefit, and that of the absentee. When it was for the sole benefit of the latter, as was the case here, some of them are of opinion that it might, and others that it could not. We incline to the former opinion. We found our conclusion on there being nothing express in the law on the subject. That it is clear, the party stipulating had such a right, when contracting under the Roman jurisprudence, whose general provisions are the same as those of the

Spanish. And that on a question of this description, where the law is silent, and reason speaks so loudly in favor of revoking such promises, we should sanction the right to do so.

This very case shews in as striking a light as any that could be presented, how grossly unjust a different rule would be. Twenty-seven years ago, John Gravier received the property of his brother's estate, on condition to pay the debts and deliver the surplus, if any, to the heirs. When called on, after such a lapse of time, to render an account, he says he has not complied with one part of his promise; and because he has not done that, he should not be obliged to perform the other. To permit him to use such a defence, would be allowing him to profit by his own wrong. If debts exist, why has he not paid them? If there are none such, he should deliver to the heirs the balance. If it be uncertain whether there are or not, he ought not to hold the funds from the persons who are responsible for the debts, for if he can use that argument with effect now, he might always use it in the same way. The terms on which he acquired, however, completely refute the pretention last mentioned. They were: to pay such creditors as might appear.

East'n. District.
*Jany.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

East'n District
Jan'y. 1825.

GRAVIER
vs.
GRAVIER'S
HEIRS.

and legally establish their claims; appear, when? Within the time fixed by law for persons to administer estates. Any other construction would lead to the grossest absurdity, and allow the purchaser, or rather administrator to hold the property in his hands forever. 4 *Martin*, 409. 7, *Toullier, liv.* 3, *tit.* 3, *n.* 24, & 25. *Merlin questions, de droit. stiputation pour autrui,* 1, 2, 3, 4, 5. 3 *Martin,* 247.

Before reaching the merits, another question of law remains to be disposed of. It is presented, by an exception taken to the introduction of certain witnesses of the plaintiffs. The defendant having offered notes and documents to establish that he was a creditor of Bertrand Gravier's estate, the plaintiff averred they were forgeries, and to prove them such, introduced several witnesses, who swore that from a variety of reasons, they did not consider them to be executed at the time which they bore date, nor by the person whose signature they purported to bear. To such testimony the defendant objected, on the ground that no formal disavowal had been made by the plaintiffs to their hand writing, and that it could not be received on bare suggestion.

The defendant, in this objection, has mista-

East'n. District.
*Jan'y.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

ken the practice, and confounded the right of the party introducing the paper, with him against whom it is produced. Proof by experts, or comparison of hands, cannot be resorted to by the former, unless formally denied by the maker; but if introduced and proved, the opposite party may shew by any *legal* evidence, that it is not his writing, or in other words, that the testimony by which it has been attempted to be established, is not correct.— That the evidence offered here was legal, we have not the smallest doubt.

Both parties have complained of the judgment of the inferior court. The plaintiffs insist that it should have been in their favour for $52,280 96 cents, instead of $25,283 75 cents, with interest, on the balance of the real estate. The defendant contends that the amount due by him at the utmost, cannot be carried beyond $6,624. To detail at length the acts and reasons on which the parties have arrived at conclusions so widely different, is unnecessary. It would be impossible to render it intelligible to the minds of others, without extending in this opinion the whole evidence, which is voluminous, beyond any example that has yet occurred in this court. We have examined it

with all the attention in our power, and we are unable to say that the evidence authorises us to come to a different conclusion from that of the district judge.

There are, however, some objections made by the defendant, John Gravier, which it would not be proper to pass over without stating the reasons which have prevented us from sustaining them. The principal one is to the refusal of the district court to allow him a credit for a note of his brother Bertrand, dated in the year 1796, for $15,000 62 1-2 cents, payable six years after date, and which note he avers, is supported by an account current, signed by the parties on the same day that the note was executed.

The district judge was of opinion these documents, together with some others introduced by the defendant, were false. How gratified we should have been had the evidence permitted us to come to a different conclusion, we need not state. But it has not allowed us to do so; and painful as it is to express an opinion, which implies such a total want of moral principle in one of our citizens, justice requires it, and our first duty is to satisfy her demands.

The defendant introduced a witness in the

court below, J. P. Guinaut, who declared that
he believed the signature of B. Gravier to the
note and account current, was genuine. This
fact does not appear to have been much con-
troverted. Indeed it is the very existence of
that signature, and the appearance it has, com-
pared to that which was written above it, that
furnishes one of the strongest reasons against
the obligation presented.

Five witnesses examined in the court below,
positively swear, that they were of opinion
the hand-writing of the body of the note was of
a much more recent date, than that which it
purports to bear. Three of them thought it
could not be more than two years old, if so
much. One of them thought it might have been
written three or four years ago. The fifth
stated, the filling up of the note was in the
hand-writing of John Gravier, according to the
best of his opinion, founded on having seen the
said John Gravier often write.

With the opinion of these witnesses this court
entirely concurs. The note and account cur-
rent, both bear, in our opinion, the most satis-
factory evidence of having been quite recently
made. The signature of B. Gravier to each are
ancient, but what is written above them is

VOL. III. (N. s.)        28

East'n. District.
*Jan'y.* 1825.

GRAVIER
*vs.*
GRAVIER'S
HEIRS.

fresh.   How these signatures were obtained, we need not enquire.   The counsel for the plaintiffs has suggested several ways in which it is probable they were got.   We need not say which we adopt.   For no matter how they were got, unless we reject the evidence of our senses, when the documents are presented for inspection; it is impossible to resist the conviction which forces itself on the mind on examining them.

There is another circumstance which has not been without its weight.   Different documents have been presented by the defendant, in which alterations to his advantage, and the injury of his co-heirs, have been made.   They are so clumsy, and so apparent, that the counsel has not attempted to deny them.   No satisfactory reason has been given for their production.   In one of them, the alteration has been made to correspond with an item in the account current.   And when this alteration is brought close to that account, and compared with it; they appear to have been both done with the same ink and the same pen.

The defendant contended there was error in the judge below not allowing him the increased value of certain property adjudged to

him as part of the estate, and from which property he was afterwards evicted by a judgment of the late superior court,   We think there was no error in this.   John Gravier was the person who acted for the succession, and at whose instance its property was sold.   Every thing in relation to it was caused by his intervention. The lots were expressly adjudged to him as litigious property.

We see, therefore, neither a legal, nor equitable right, in him to be paid the increased value at the time of eviction.

On the whole, we are not able to discover that any errors in law have been committed by the district judge.   Nor can we find sufficient evidence to justify us in reversing his judgment on the questions of fact at issue.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*Young* for the plaintiff, *Derbigny* for the defendant.